IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYLE D. GRIFFITH, M.D., | CASE NO. CV F 09-2132 LJO GSA |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTIONS TO DISMISS** (Doc. 22) |
| vs. | |
| CORCORAN DISTRICT HOSPITAL, JONATHAN BRENN, CEO of Corcoran District Hospital and an individual, DAVID HILL, JAMES CARTER THOMAS, M.D., LISA IVERS, Chief Nursing Officer of Corcoran District Hospital, and SUE FAIRCHILD, Operating Room Supervisor for Corcoran District Hospital. | |
| Defendants. | |

**INTRODUCTION**

Defendants Corcoran District Hospital ("Hospital"), Jonathan Brenn ("Mr. Brenn"), James Carter Thomas, M.D., ("Dr. Thomas"), Sue Fairchild, and Lisa Ivers ("Ms. Ivers") (collectively "defendants") move to dismiss plaintiff Lyle D. Griffith's ("Dr. Griffith's") complaint pursuant to Fed. R. Civ. P. 12(b)(1). Defendants contend that this Court should refuse to exercise jurisdiction over this matter based on the *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d. 669 (1971) and its progeny ("*Younger* abstention doctrine"), because administrative and state court proceedings based on the allegations of Dr. Griffith's complaint are pending. In the alternative, defendants argue that this action is not ripe because Dr. Griffith has failed to exhaust administrative remedies. In opposition, Dr. Griffith argues that this

1

Court should retain jurisdiction over this action, as the state and administrative proceedings are no longer pending and this action seeking monetary damages does not interfere with the administrative proceedings. In addition, Dr. Griffith argues that this claims are ripe for review. For the following reasons, this Court GRANTS in part and DENIES in part defendants' Fed. R. Civ. P. 12(b)(1) motion.

## BACKGROUND

### Dr. Griffith's Claims

This action arises from defendants' denial of Dr. Griffith's "access to, and use of, the medical and surgical facilities at [Hospital]." Compl, ¶12. Dr. Griffith is a board certified adult and pediatric urologist. Since October 1, 2002, Dr. Griffith had full medical staff privileges to admit patients and perform defined surgeries at Hospital. In September 2008, however, and continuing to the present time, defendants denied Dr. Griffith full access to, and use of, Hospital's surgical facilities.

Defendants revoked Dr. Griffith's Hospital privileges based on a hand tremor. Defendants "and other hospital staff contend that they were 'concerned' about Dr. Griffith's ability to perform surgeries due to a perceived physical disability in the form of a hand tremor." Compl., ¶21. Dr. Griffith "has had this tremor for his entire medical career" and "has been successfully completing surgeries from October 1, 2002 through September 2008." In addition, defendants admitted that there have been no complaints or reports filed against Dr. Griffith by either hospital staff or patients.

Dr. Griffith contends that defendants refused to allow him his Hospital and surgical privileges in violation of his due process rights on the basis of his perceived physical disability. Dr. Griffith initiated this action on December 8, 2009, to assert the following claims against defendants: (1) discrimination on the basis of a perceived physical disability in violation of the Americans with Disabilities Act, 42 U.S.C. §12010 et seq. ("ADA"); (2) Violation of the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq.; (3) Violation of the Unruh Civil Rights Act, California Civil Code §54 et seq; and (4) violation of due process rights, 42 U.S.C. §1983 ("Section 1983").

### State Court Action, Surgeries, and Summary Suspension

On February 9, 2009, Dr. Griffith initiated an action against Hospital, David Hill, and others in Kings County Superior Court, Case No. 09 C 004 ("Kings County case") to seek injunctive relief. Declaration of Jonathan Brenn ("Brenn Decl."), Ex. A. On February 11, 2009, Dr. Griffith obtained a

temporary restraining order ("TRO") in the Kings County case to restrain defendants from denying Mr. Griffith access to the Hospital and its surgical facilities. Compl., ¶23.

After obtaining the TRO, Dr. Griffith contacted defendants to schedule surgeries. Defendants "advised him that their employees would not work with Plaintiff and that the procedures should be planned elsewhere." Compl., ¶24. On February 19, 2009, however, Ms. Ivers, Hospital's Chief Nurse, sent a facsimile to Dr. Griffith stating that he could proceed with three surgeries at Hospital provided that they were scheduled and performed on the same day. On the scheduled day of the surgeries, February 20, 2009, Dr. Griffith arrived at Hospital only to be informed that the operating room was closed. After discussion between the parties' attorneys, Dr. Griffith was allowed to perform the three scheduled surgeries. During the first surgery, Hospital "violated Dr. Griffith's privileges and the patient's right to privacy by requiring a Hospital staff member to observe the surgery without written consent from the patient." Compl. ¶26.

Dr. Griffith sought an order in the Kings County case based on what he perceived as Hospital's violation of the TRO on the day of the surgeries. As that motion was pending, defendants summarily suspended Dr. Griffith, as set forth below. In response, the Court dissolved the TRO, denied Dr. Griffith's preliminary injunction motion, and stayed the action.

Dr. Griffith dismissed the stayed Kings County action on February 3, 2010, after the instant motion was filed. Declaration of Rhys C. Boyd-Farrell ("Farrell Decl."), Ex. E.

**Administrative Action**

On February 25, 2009, defendants "retaliated against" Dr. Griffith "for obtaining a court order to enforce his right to utilize the hospital privileges" by "summarily suspending those privileges." Compl. ¶27. Dr. Thomas, Hospital's purported Chief of Staff, informed Dr. Griffith by letter that he was suspended on the grounds that Dr. Griffith's insistence on doing surgery on February 20, 2009 constituted a "substantial likelihood of imminent danger to the health or safety of patients," "numerous reports of disruptive behavior," and "repeated reports of your severe hand tremor." Compl. ¶27; Letter from James Carter Thomas, M.D., Compl. Ex. A.

Hospital's Board of Directors ("Board") held a public meeting on April 14, 2009. The Board adopted a resolution admitting that Dr. Taylor's Chief of Staff status had expired at the time he

summarily suspended Dr. Griffith. "Despite lacking the authority to appoint a Chief of Staff," the Board adopted a resolution to extend Dr. Thomas' term. Compl., ¶30. In addition, the Board ratified Dr. Griffith's summary suspension.

On April 25, 2009, Dr. Griffith filed a claim with the Hospital for damages arising from defendants' violation of the ADA, the Rehabilitation Act, Section 1983, and the Unruh Civil Rights Act. According to the complaint, Hospital notified Dr. Griffith that his claim was rejected on November 9, 2009. Compl., ¶33. Defendants dispute that Dr. Griffith's claim was rejected.

A November 9, 2009 letter by Dr. Griffith's counsel indicates that Dr. Griffith objected to Hospital's proposal for the hearing based on his position that the status of the "MEC and Chief of Staff" were in dispute. Brenn Decl., Ex. B. A January 14, 2010 letter to Dr. Griffith's counsel explains that the Hospital "interprets your and Dr. Griffith's refusal to participate in the peer review hearing process as a withdrawal of Dr. Griffith's request for a hearing." Brenn Decl., Ex. C. Based on what Hospital interpreted as a withdrawal of his request, the January 14, 2010 letter further indicates that Hospital "therefore will send its action and recommendation to the Governing Body for final action." *Id*. A February 8, 2010 letter summarizes the Hospital's position that "Dr. Griffith will not participate in the peer review hearing provided for in the Medical Staff Bylaws...[Hospital] interprets this as a waiver of Dr. Griffith's hearing rights." Farrell Decl., Ex. F. The February 8 letter concludes that the Hospital "believes it has satisfied all of its obligations toward Dr. Griffith and that Dr. Griffith has waived his hearing right." *Id*.

**Procedural History**

Defendants moved to dismiss on January 29, 2010, with defendant Ms. Ivers joining the motion to dismiss on March 8, 2010. Dr. Griffith opposed the motion on March 8, 2010. Defendants filed an untimely reply on March 16, 2010. This Court finds this motion suitable for a decision without a hearing, vacated the March 22, 2010 hearing pursuant to Local Rule 230(g) and issues the following order.

**STANDARD OF REVIEW**

In considering a motion to dismiss for lack of subject matter jurisdiction, the plaintiff, as the party seeking to invoke the court's jurisdiction, always bears the burden of establishing subject matter

4

jurisdiction. *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001). The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America*, 114 S.Ct. 1673, 1675 (1994).

A Fed . R. Civ. P. 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000) (citation omitted). The defendants' current motion is a factual attack, because it "relie[s] on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on the basis of the pleadings." *Safe Air for Everyone,* 373 F.3d at 1039 (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n. 5 (11th Cir.2003)). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Publ. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n. 2.

## DISCUSSION

### *Younger* Abstention

Defendants argue that this Court should dismiss this action for lack of subject matter jurisdiction under the *Younger* abstention doctrine because Dr. Griffith is participating in two pending proceedings. The *Younger* abstention doctrine is a "'circumscribed exception to mandatory federal jurisdiction,' which applies when there is a pending state proceeding that implicates important state interests and provides the federal plaintiff with an opportunity to raise federal claims." *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003) (quoting *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir.) (en banc), *cert. dismissed*, 533 U.S. 966 (2001)). "As a threshold matter, for *Younger* abstention to apply, the federal relief sought must interfere in some manner with the state litigation." *Baffert,* 332 F.3d at 617. The Court abstains under *Younger* if the following requirements are met:

5

> (1) a state-initiated proceeding is on-going; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating the federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves.

*San Jose Silicon Valley Chamber of Commerce,* 546 F.3d 1087, 1092 (9th Cir. 2008); *Baffert*, 332 F.3d at 617; *Kenneally v. Lungren*, 967 F.2d 329, 331 (9th Cir. 1992); *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423 (1982). If these factors are met, this Court abstains from exercising jurisdiction over a plaintiff's claims unless the plaintiff demonstrates "bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate." *Kenneally*, 967 F.3d at 332. "As virtually all cases discussing [*Younger* abstention] emphasize, the limited circumstances in which abstention by federal courts is appropriate remain the exception rather than the rule." *San Jose Silicon Valley Chamber of Commerce*, 546 F.3d at 1092. Thus, "when each of the doctrine's requirements are not strictly met, the doctrine should not be applied." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).

Defendants moved to dismiss this action on grounds that two state proceedings were ongoing–the Kings County action and the administrative proceeding. The Court considers this motion as to each proceeding separately.

### Kings County Action

Defendants base their *Younger* abstention motion in part on the Kings County action initiated by Dr. Griffith on February 9, 2009. In his opposition, Dr. Griffith points out that he dismissed the Kings County action on February 3, 2010. Dr. Griffith contends that based on the dismissal of the Kings County action, the state proceeding in no longer "ongoing," and *Younger* abstention is unwarranted. Defendants appear to concede Dr. Griffith's position that the Kings County action is no longer ongoing, as they abandoned their Kings County action argument in their untimely reply.

The dismissal of the Kings County action does not defeat this motion automatically. "Where *Younger* abstention is appropriate, a district court cannot refuse to abstain" simply because the state proceedings end prior to the court's decision on the merits of the *Younger* motion. *Beltran v. California*, 817 F.2d 777, 782 (9th Cir. 1988); *M & A Gabaee v. Cmty. Redevelopment Agency of L.A.*, 419 F.3d 1036, 1042 (9th Cir. 2005) (explaining that *Beltran* holding "reject[s] proposition that abstention is

unwarranted if the state proceedings had terminated after the federal filing but before the federal decision regarding abstention"). "Under the logic of *Younger* and *Hicks[v. Miranda, 422 U.S. 332, 45 L. Ed. 2d 223, 95 S. Ct. 2281 (1975)]*, it makes no difference what stage the state-court proceedings are at: what matters is that the existence of a pending state-court action unmistakably signals the state's willingness and readiness to adjudicate the dispute." *Gabaee*, 419 F.3d at 1042.

Nevertheless, the Kings County action is not an ongoing state proceeding for *Younger* purposes. Because the Kings County action was stayed, the state court was neither ready nor willing to adjudicate the dispute while the peer review process was ongoing. In addition, the state court proceeding had not engaged in "proceedings of substance" before it was stayed and eventually dismissed. *Aaron v. Target Corp.*, 357 F.3d 768 (8th Cir. 2004); *Gabaee*, 419 F.3d at 1041 ("The core of *Aaron's* holding was thus that mere motions for an injunction do not qualify as 'proceedings of substance' in federal court."). Moreover, the *Beltran* rule is inapplicable in this action for monetary damages, where dismissal is not the appropriate remedy. Under *Beltran*, a plaintiff may proceed on his or her federal claims in federal court by "simply...refiling their federal complaint[.]" 871 F.2d at 782. In this civil rights action for damages, in which this Court is required to stay rather than dismiss the action, Dr. Griffith has no such procedural recourse to cure the defect. *See AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007) (emphasis in original) ("When a federal plaintiff seeks monetary damages (rather than injunctive or declaratory relief) in a case requiring abstention under *Younger*, *dismissal* is not the appropriate procedural remedy."); *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc) (Although "*Younger* principles apply to actions at law as well as for injunctive relief..., federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until state proceedings are completed."). Accordingly, *Beltran* is distinguishable on these grounds.

Additionally, abstention under *Younger* is inappropriate because this action does not interfere with the Kings County action. If the three *Younger* elements are established, the Court "abstains only if there is a *Younger*-based *reason* to abstain–i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *AmerisourceBergen Corp*, 495 F.3d at 1149 (emphasis in original). Even if the Kings County action were ongoing, "'[t]he mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal

7

jurisdiction,' much less abdicating it entirely." *Id.* at 1151 (quoting *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976)). Because the state action was stayed and eventually dismissed, there is no danger that this action would have an effect of enjoining or interfering with it. Moreover, Dr. Griffith's federal action, which seeks monetary damages for civil rights claims based on allegations prior to the summary suspension, does not interfere with the Kings County action, which sought injunctive relief to prevent defendants from suspending Dr. Griffith's privileges. "[A]s long as the action requested of the federal court...does not enjoin or have the practical effect of enjoining the ongoing state court proceedings...then abstention is not warranted." *Id.* at 1152.

For these reasons, this Court will not abstain from exercising jurisdiction over Dr. Griffith's claims to the extent that defendants' *Younger* abstention motion relies on the Kings County action.

**Peer Review Hearing**

The Court next considers the *Younger* abstention factors as they apply to the administrative proceeding. In this action, the second *Younger* element is satisfied, as "the State's interests in the [ongoing] proceeding are so important that the exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). "The importance of the [state's] interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert*, 332 F.3d at 618. The hospital peer review system created under California law "is essential to preserving the highest standards of medical practice." Cal. Bus. & Prof. Code §809(a)(3). The statutory scheme was developed to "protect the health and welfare of the people of California. Cal. Bus. & Prof. Code 809(a)(6). As the health and welfare of the state are important state interests, this element is satisfied.

While the second *Younger* factor clearly is established, resolution of the first and third *Younger* factors requires a more detailed analysis. The parties dispute whether the peer review proceedings are ongoing. Defendants claim that although Dr. Griffith refuses to participate in the hearing, the administrative process is continuing. Dr. Griffith contends that the peer review process is no longer pending because of the Hospital's position that Dr. Griffith has waived his right to a hearing. In addition to these arguments, the Court must consider whether the peer review process provided Dr. Griffith with an adequate opportunity to litigate his federal claims. To determine these issues, a background of the

Hospital's peer review process is helpful.

*Cal. Bus. & Prof. Code 809 et seq.*

"In 1989, the California legislature enacted California Bus. & Prof. Code section 809 et seq. for the purpose of opting out of the federal Heath Care Quality Improvement Act of 1986 (42 U.S.C. §11101 et seq.)." *Unnamed Physician v. Bd. of Trustees of St. Agnes Medical Center*, 93 Cal. App. 4th 607, 616 (2001). "The statutory scheme delegates to the private sector the responsibility to provide fairly conducted peer review in accordance with due process, including notice, discovery and hearing rights, all specified in the statute." *Id*. (citing *Shacket v. Osteopathic Medical Board*, 51 Cal. App. 4th 223 (1996); Cal. Bus. & Prof. Code §§809-809.8).

"The peer review process, while generally delegating responsibility to the private sector to monitor the professional conduct of physicians, establishes minimum protections for physicians subject to adverse action in the peer review system." *Mileikowsky v. West Hills Hosp. & Medical Center*, 45 Cal. 4th 1259, 1268 (2009). Ordinarily, an adverse action, such as a suspension of privileges, is not implemented until after the physician has been afforded due process rights, included an investigation, notice, and a right to a hearing. *See,* Cal. Bus. & Prof. Code §§809.1-4. After an initial hearing by a peer review committee, a "physician...has the right to have a second body of peers independently determine whether a peer review committee's recommendation to deny the physician's...privileges is reasonable and warranted considering not only the evidence that led to the peer review committee's findings, but also any additional evidence at the hearing." *Mileikowsky*, 45 Cal. 4th at 1269.

A physician may challenge an administrative adverse ruling through the California courts. "[B]efore a doctor may initiate litigation challenging the propriety of a hospital's denial or withdrawal of privileges, he must exhaust the available internal remedies afforded by the hospital." *Westlake Comm. Hospital v. Superior Court of Los Angeles County*, 17 Cal. 3d 465, 469 (1976). A physician challenges the administrative panel's final decision through a writ of mandamus. *Medical Staff of Sharp Memorial Hospital v. Superior Court*, 121 Cal. App. 4th 173, 181 (2004); *Bollengier v. Doctors Medical Center*, 222 Cal. App. 3d 1115 (1990). A physician "must first succeed in setting aside the quasi-judicial decision [to suspend privileges] in a mandamus action" before he or she "may institute a tort action for damages" in a California court. *Westlake*, 17 Cal.3d at 469.

In addition to the procedure set forth above, the statutory framework permits an immediate suspension of privileges without notice or a hearing "where the failure to take that action may result in an imminent danger to the health of an individual." Cal. Bus. & Prof. Code §809.5. Under this statute, a hospital may summarily suspend a physician "provided that the licentiate is subsequently provided with the notice and hearing rights set forth in Section 809.1 to 809.4, inclusive." *Id*. Cal. Bus. & Prof. Code §809.5 "places a boundary on a governing body's role in the peer review process, but it does not specify this role." *Weinberg v. Cedars-Sinai Medical Center*, 119 Cal. App. 4th 1098, 1108 (2004). Although the procedure is unspecified, a hospital must provide the physician with hearing, if requested according to the statute. Dr. Griffith was summarily suspended pursuant to Cal. Bus. & Prof. Code §809.5.

To comply with Cal. Bus. & Prof. Code §809 et seq., Hospital must adopt bylaws that include formal procedures for "the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate." *Oliver v. Bd. of Trustees*, 181 Cal. App. 3d 824, 827 (1986); Cal. Bus. & Prof. Code §809(a)(8). "It is these bylaws that govern the parties' administrative rights." *Unnamed Physician*, 93 Cal. App. 4th at 617. The bylaws outlining these procedures constitute a binding and enforceable contract between a hospital and a physician. *Janda v. Madera Community Hospital*, 16 F.Supp.2d 1181, 1184 (E.D. Cal. 1998). The summary suspension section "on its face, ensures the Board a 'legitimate function' in the peer review process without mandating the form this function must take. Generally, case authority establishes that the governing body's precise role within the peer review process of a given hospital is determined by the bylaws and regulations of the medical staff." *Id*. Inexplicably, neither party submitted the relevant provisions of the Hospital's bylaws in this motion.

Under the backdrop of this framework, the Court turns now to consider the first and third *Younger* factors as they apply to the administrative process. The Court begins with the third factor–whether Dr. Griffith had the ability to litigate his federal claims in the state administrative proceedings.

///

*Ability to Litigate Federal Constitutional Claims*

The Court abstains under *Younger* if the plaintiff has an opportunity to litigate fully his federal claims in the state forum. "[T]he mere assertion of a substantial constitutional attack challenge to state action will not alone compel the exercise of federal jurisdiction." *New Orleans Pub. Serv. Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989). The Court abstains even if the plaintiff asserts federal constitutional claims because "[m]inimal respect for the state processes...precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex*, 457 U.S. at 431. "The burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [his] claims." *Baffert*, 332 F.3d at 619.

To be adequate and meaningful, the opportunity to litigate federal claims in a state administrative proceeding must be provided prior to the administrative deprivation. In *Kenneally*, 967 F.2d 329, the United States Court of Appeals for the Ninth Circuit considered whether the statutory framework of Cal. Bus. & Prof. Code §809 satisfies the third *Younger* element. In that case, the physician plaintiff filed a Section 1983 action in federal court seeking to enjoin the California Attorney General and members of the State medical board from holding an administrative hearing to revoke his license. In considering whether the plaintiff had a meaningful opportunity to present his federal claims, the court pointed out that the Board had the ability to stay its revocation order while the plaintiff appealed the order to the state, and the state court had the ability to continue the stay during the pendency of the challenge. *Id.* at 332. Based on these facts, the *Kenneally* court concluded that Cal. Bus. & Prof. Code §809 et seq. "provides a meaningful opportunity for [a plaintiff] to present his [or her] constitutional claims for independent judicial review prior to the Board's decision become effective." 967 F.3d at 332-33. Notably, the *Kenneally* court did not consider whether a summary suspension pursuant to Cal. Bus. & Prof. Code §809.5 provided adequate opportunity to litigate federal claims.

The Ninth Circuit confirmed the *Kenneally* position in *Baffert*, 332 F.3d at 620-621. In concluding that the third *Younger* factor was satisfied, the Court reasoned:

> Plaintiff can litigate his claims fully in the state forum. He has not shown that he will be forced to serve his suspension before he has had a chance to adjudicate his federal claims in the state forum. To the contrary, until the district court entered an injunction below, the state court had stayed Plaintiff's suspension pending his appeal. Plaintiff has yet to serve the 60-day suspension, and there is no reason to think that he will be forced to do

11

so before his appeal is heard in the state forum.

Thus, pursuant to *Kenneally* and *Baffert*, "*Younger* requires that the plaintiff be afforded an opportunity to present and have considered the merits of the federal claim before suffering the deprivation." *Adibi v. Cal. State Bd. of Pharmacy*, 393 F. Supp. 2d 999, 1010, 1011 (N.D. Cal. 2005).

The parties do not dispute that Dr. Griffith's suspension became effective *prior* to his opportunity to present his federal claims. As set forth above, Cal. Bus. & Prof. Code §809.5 is an exception to the pre-deprivation hearing procedure. This statute allows a hospital to suspend a physician immediately, provided that the physician receives *subsequent* notice and a hearing. Under this statute, and based on the undisputed facts, Dr. Griffith had no opportunity to litigate his federal claims before his privileges were suspended. *Sharp Memorial Hosp.*, 12 Cal. App. 4th 173 (Business and Professions Code section 809.5 permits the medical staff to summarily suspend a physicians privileges, subject to her right to a *post-suspension* hearing). Cal. Bus. & Prof. Code §809.5 is a "procedural law barr[ing] presentation of [his] claims" prior to the adverse administrative action. *Baffert*, 332 F.3d at 619. Accordingly, Dr. Griffith's summary suspension did not provide him with an adequate opportunity to litigate his federal claims in the state forum.

Because the plaintiff was not given an adequate opportunity to litigate his federal claims in the state forum prior to suspension, *Younger* is inapplicable. "[W]hen each of the [*Younger*] doctrine's requirements are not strictly met, the doctrine should not be applied." *AmerisourceBergen*, 495 F.3d at 1148. Accordingly, this Court need not consider the final *Younger* factor as it relates to the peer review proceeding.

For the foregoing reasons, this Court rejects defendants' motion to abstain from exercising jurisdiction over Dr. Griffith's claims.

**Ripeness/Exhaustion of Remedies**

In the alternative, defendants argue that this Court should dismiss Dr. Griffith's claims because they are unripe. Defendants contend that Dr. Griffith's claims are not ripe because he failed to exhaust his administrative remedies, including internal and mandamus remedies. Defendants correctly point out that Dr. Griffith must exhaust state administrative remedies before he can pursue his state cause of action. As to Dr. Griffith's federal claims, however, defendants' position relies on inapplicable

California and federal law. Accordingly, Dr. Griffith's federal claims are ripe.

Defendants rely on *Westlake*, 17 Cal. 3d 465, 469, to argue that Dr. Griffith must pursue his administrative and mandamus remedies before he can institute a federal action for damages. The *Westlake* ruling applies to Dr. Griffith's state law claim, based on California's Unruh Civil Rights Act, California Civil Code §54 et seq. *See, Bollengier*, 222 Ca. App. 3d 1115. Because Dr. Griffith is required to exhaust administrative remedies prior to raising a state law claim, his third cause of action is dismissed.[1]

Defendants assert that Dr. Griffith must exhaust state administrative proceedings before he can assert a Section 1983 claim in this Court. For this proposition, defendants rely on *Sam Remo Hotel City and County of San Francisco*, 145 F.3d 1095, 1103 (9th Cir.1998). In *San Remo*, the court considered whether a a plaintiff may pursue a claim in federal district court when that a state agency has taken property in violation of the Fifth Amendment's Takings Clause prior to exhausting a state proceeding. *In San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 349 (2005). Those limited circumstances and that limited ruling make *San Remo* distinguishable from and inapplicable to this action.

The ripeness of Dr. Griffith's federal claims is unaffected by his failure to exhaust state administrative remedies. Generally, plaintiffs suing under Section 1983 are not required to exhaust state administrative remedies. *Patsy v. Bd. of Regents of Fla*, 457 U.S. 516 (1982). Dr. Griffith correctly contends that his Section 1983 claim because ripe when the harm allegedly was committed. *See, Rendell-Baker v. Kohn*, 457 U.S. 830, 839-43 (1982). Similarly, Dr. Griffith's ADA and Rehabilitation Act claims became ripe at the time defendants allegedly discriminated against Dr. Griffith. *See, Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113 (3rd Cir. 1998). Defendants argue that Dr. Griffith must exhaust administrative remedies based on *Westlake*; however, defendants cite no authority to support their position that Dr. Griffith must exhaust state administrative remedies prior to pursuing federal claims in a federal court. This position is bolstered by the fact that Dr. Griffith is not

---

[1] Dr. Griffith's state law claim is dismissed with prejudice. Because he failed to exhaust administrative remedies to this claim, he lacks jurisdiction to pursue this claim. Accordingly, amendment of this claim would be futile. *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973).

seeking relief that would be available in the administrative and mandamus procedure. The administrative and judicial remedies provide Dr. Griffith a procedure to challenge directly the adverse administrative action. In this action, Dr. Griffith does not seek reinstatement of his privileges and challenges defendants' actions that took place prior to the summary suspension. Accordingly, Dr. Griffith successfully establishes that his federal claims are ripe.

### CONCLUSION AND ORDER

For the foregoing reasons, this Court:

1. GRANTS in part and DENIES in part defendants' Fed. R. Civ. P. 12(b)(1) motion; and

2. DISMISSES with prejudice Dr. Griffith's third cause of action based on California's Unruh Civil Rights Act, California Civil Code §54 et seq.IT IS SO ORDERED.

Dated:   **March 25, 2010**            /s/ Lawrence J. O'Neill
                                       UNITED STATES DISTRICT JUDGE